### SMITH & AL. vs. PIERCE & AL.

The fact that the vessel of the plaintiffs was run aground while towed by a steam-boat, raises a presumption of negligence and misconduct on the part of the captain of the boat, which renders its owner liable to an action.

Owners of steam tow-boats are liable as common carriers.

Eastern District.
*May*, 1830.

SMITH & AL.
*vs.*
PIERCE & AL.

APPEAL from the court of the first district.

This was an action to recover damages from the owners of the tow-boat Grampus, for having run the vessel of the plaintiffs ashore, while towing her to sea. The damages were laid at two thousand seven hundred and forty-six dollars and twenty-three cents, and the defendants pleaded the general issue.

The captain of the vessel testified, that about eight o'clock in the evening he was ordered by the Grampus, to put his helm two spokes to starboard, and to let it remain so until further orders. That there was a regular watch on his vessel during the night; and that the orders first received were not countermanded until after the vessel struck. That the night was clear and the surrounding objects distinctly visible. The vessel grounded on the right bank of the river about sixty yards from the shore. This testimony was corroborated by the mate and the seaman at the wheel.

On the part of the defendants, the pilot and mate of the Grampus, testified that the orders to the vessel were to keep her helm *three spokes* to starboard. That about six minutes before the accident, the vessel was ordered to starboard her helm, that the order was reiterated five or

six times, to which no answer was returned from the vessel. It appeared from the testimony, that it was customary, particularly in the night, for tow-boats to keep near the shore of the right bank in order to make the south-west pass, and that the Grampus, was in the usual and proper track. It further appeared, that the commander of the Grampus, was master of his profession, experienced in the business, and extremely diligent and attentive. The defendants requested the judge to charge the jury, that if no misconduct or negligence had been proven on their part, they were entitled to a verdict. The judge refused so to charge, and the defendants took their bill of exception. There was a verdict and judgment for the plaintiffs, and the defendants appealed.

*Workman* and *Pierce*, for the appellants, made the following points in the case.

1. The charge prayed by the defendants to be delivered to the jury, ought to have been made.

2. The owners of the steam-boat are not liable in this case for the alleged negligence or misconduct of the captain or crew of said boat, and the plaintiffs cannot recover, because they have

not shown or alleged, that the said owners could have prevented the acts, from which the damages they claim are said to have arisen.

3. There is no evidence of negligence or misconduct of any other offence, or *quasi* offence against the captain or crew of said steamboat.

MATHEWS J. delivered the opinion of the court. This suit is brought to obtain reparation for damages, which the plaintiffs alleged they have suffered as owners of the brig Jesse, by the negligent and unskilful towing of said vessel by the steamboat Grampus, down the Mississippi, &c. The owners of the boat are made defendants. The cause was tried by a jury in the court below, who found a verdict for the plaintiffs, and assessed their damages to two thousand four hundred and fifty-eight dollars and sixty-five cents, for which, judgment was rendered and the defendants appealed.

The evidence of the case shows, that the brig was run aground near the shore of the river, whilst she was lashed to the steam-boat and whilst the latter vessel was in the act of towing her to sea for hire, according to the

usage in such cases. The answer contains a general denial of the allegations in the petition, and an averment that the defendants are not in any manner liable. It seems from the testimony taken in the cause, that an attempt was made on their part to prove that the accident occurred in consequence of the negligence and misconduct of the master and mariners on board the brig, and not that of the captain and crew of the steam-boat. In this, we are of opinion that they did not succeed; and even if such negligence had been proven, it is doubtful whether it would exonerate them.

Eastern District.
*May*, 1830.

SMITH & AL.
*vs.*
PIERCE & AL.

There is a certain class of steam-boats called tow-boats, used by the owners in the business of towing vessels from New-Orleans down the Mississippi, to the Gulf of Mexico. This is the ordinary occupation in which they are employed, and are publicly offered to all persons who may choose to hire them for this purpose.

The first question of importance in the present case, arises out of the bill of exception to the opinion of the judge *a quo*, by which he refused to instruct the jury, that if no negligence or misconduct on the part of

the master of the steam-boat had been proven in this case, the defendants are entitled to a verdict in their favor. It is perhaps doubtful, whether the refusal of the judge to comply with the request to charge the jury as stated in the exception, would under all the cir-cumstances of the case, have been erroneous, allowing that the defendants are not, accord-ing to the nature of the business and trade which they carry on, subjected to all the se-vere responsibilities which are by law, impos-ed on common carriers. The fact proven that the brig of the plaintiffs was run aground, while under the direction and in towing by the steam-boat, raises a presumption of negli-gence or mismanagement on the part of the captain of the latter vessel, which makes the owners liable to pay for the damages conse-quent on this accident. And this presump-tion supports the claim of the plaintiffs, unless contrary proof had been adduced, showing at least ordinary care and diligence, such as is usually practiced by prudent men, which, the whole evidence taken together, does not establish. The boat was unnecessarily and imprudently near the bank of the river when the accident occurred. The main question

*The fact that the vessel of the plaintiffs was run aground while towed by a steam boat, raises a presumption of negligence and misconduct on the part of the captain of the boat, which ren-ders its owner lia-ble to an action.*

to be settled is, whether the owners of steam-
boats, used for towing vessels, are to be held responsible as common carriers. This business is so new, that nothing strictly relating to the obligations imposed on those who pursue it, can be expected to be found in any legal treatise, or adjudged cases. Their just standing in this respect must be sought in analogy. Common carriers are those whose trade is to carry goods for hire. The trade of the owners of tow-boats in this city, is to convey, carry or tow vessels from this place down the Mississippi to its mouths, over the bar, and out to sea; and to bring from certain points near to those mouths, ships or vessels into the port of New-Orleans; and for these purposes they offer their steam-boats to serve the public for hire. According to this definition of a common carrier, and the description of the business and trade of the owners of tow-boats, it is not easy to distinguish the trade and occupations of the one from the other; and if these be similar, the same responsibilities should be attached to the conduct of both.

A distinction is attempted to be drawn between the towers of vessels by means of steam-

boats and ordinary carriers, in consequence of the power which the rudders of the ships have over the course of the boats; and in support of this distinction we are referred to a case reported in 2 *Peters*, 150, as decided in the supreme court of the United States. That case had relation to slaves, and the summary of the decision is, (as stated by the reporter) that the law regulating the responsibilities of common carriers, does not apply to the case of carrying intelligent beings, such as negroes. The carrier has not and cannot have over them the same absolute control, that he has over inanimate matter, &c.

If these be the reasons which influenced the United States court in that case, they certainly are wholly inapplicable to the present.

The undertaking of the steam tow-boats, is to carry inanimate matter, without intelligence and uninfluenced by any moral power.

The vessels which are towed are almost entirely passive. Steam is the power by which they are moved, applied indirectly through the agency of the boat which is under the direction and management of her captain. By the contract for towing, he is bound to carry them safely to their destination, unless pre-

vented by uncontrolable accidents, or such as are not within the control of human foresight or power. If the boat be so much under the influence of the rudder of the ship, it is the duty of the master of the tow-boat to look to it. His undertaking is to tow the vessel in safety, and he has a right to assume all the authority necessary to effect that purpose. The command and care of the vessel towed, should either be subject to his command whilst she is carried by his boat, or her rudder should be placed in the hands of one of his own men. We consider a vessel thus towed, as property carried for hire, in which her crew should not be viewed as having any lawful agency. How far acts on their part, contrary to the will of the master of the boat and injurious to the success of his undertaking, would exonerate the owners from liability, need not be enquired into in the present case.

We are of opinion that the situation of proprietors of tow-boats and the business they undertake, cannot legally authorize a relaxation of the severity and rigour of the rules applicable to commoa carriers. They differ from pilots, whose business is to point out the

Owners of steam tow-boats are liable as common carriers.

course or channel to be pursued by a vessel coming into or going out of port. They are generally, persons licenced by authority of governments to follow that trade or employment, and are responsible for damages occasioned by their negligence or default; but perhaps may not be subjected to all the rigour of the law relating to common carriers, being a species of officers instituted by license, it is their duty to act when called on; whereas the towing of vessels by the owners of the steam-boats employed in that business, is done under contracts completely voluntary.

It is however, probable, that no great difference in the responsibility of pilots and towers of boats could exist. The accidents for which both might be bound to repair, the consequent damages, must, from the similarity of the undertaking, be in all instances much alike, and only excusable by uncontrolable events.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.

*BALDWIN vs. BRACY.*

A consignee has no privilege upon goods until they are delivered, unless he has received a bill of lading, or letter advising him of the shipment.

The ownership of goods is not changed by a delivery to the master of the vessel, or to the consignee; they are however subject to the claim of the latter for advances.

APPEAL from the court of the parish and city of New-Orleans.

On the 5th February, 1829, the defendant, who is a planter in the state of Mississippi, drew upon A. & S. Fisk & Co. of New-Orleans, for two thousand four hundred dollars, *as an advance upon his crop of cotton.* On the 1st March, the cotton was put on board a steam-boat, with instructions to the captain to deliver it to A. & S. Fisk & Co., to whom he was also the bearer of a letter of advice: The captain testified that he signed no bill of lading, it not being customary in the Lake and Pearl River trade to do so. Before the delivery of the cotton or letter of advice to the consignees, the cotton was attached at the suit of the plaintiff. A. & S. Fisk & Co. having paid the draft and made other advances, intervened in the suit. There was judgment for the plaintiff

Eastern District.
*May*, 1830.

BALDWIN
*vs.*
BRACY.

in the court below, and the intervening party appealed.

*Watts*, for appellant, made the following points:

1. The cotton had received its destination from the owner, and the lien attached from that moment. The captain of the steam-boat was the agent of A. & S. Fisk & Co. to receive the cotton, and it is not usual to sign bills of lading in a neighborhood trade.

2. The letter of advice accompanied the cotton. It was attached after the owner had parted with possession and given its destination.

3. The draft was a special pledge and letter of advice, and that was in possession of claimant before the cotton arrived. It showed that the cotton was despatched to A. & S. Fisk and Co., and the money was a specific advance upon the cotton attached. If the consignees had failed, and Bracy wanted to stop it in *transitu*, he could only do it on payment of the advance. Skillman vs. Bethany, 2 Mart. n. s. 104; Armor vs. Cockburne, 2 Mart. n. s. 668; 17 Massachusetts Rep. 206; 5 Taunton, 73; 4 Par-dessus, 357-8.

*McCaleb*, contra.

Before any letter or bill of lading reached the consignees, the attachment was laid on the cotton, and must therefore hold it. N. C. C. 3214; 1 Mart. n. s. 261; 2 n. s. 104; 8 Mart. 486; 9 do. 297; 10 do. 48; 1 n. s. 284; 2 n. s. 104; 4 n. s. 668; 4 Dall. 281; 17 Mass. Rep. 197; 1 Common Law Rep. 20; Paley on Agency, p. 119; 1 Bosanquet & Puller, 563.

Eastern District.<br>
*May*, 1830.<br>
BALDWIN<br>
*vs.*<br>
BRACY.

MATHEWS, J. delivered the opinion of the court. In this case the plaintiff caused to be seized under a writ of attachment, a certain quantity of cotton, on board the steam-boat Pearl River, which was consigned by the defendant to A. & S. Fisk & co. of this city, who intervened in the present suit, and claim a lien on the cotton on account of advances made by them to the consignor. The court below gave judgment in favor of the attaching creditor, from which the interveners appealed.

The evidence shows that the cotton seized was put on board the boat about the last of February or first of March, 1829, for which no bill of lading was given; but the captain of the boat had instructions to deliver it to A. and S. Fisk & co. to whom he was also the bear-

Eastern District.
·*May*, 1830.

BALDWIN
*vs.*
BRACY.

er of a letter of advice: but neither the letter nor the cotton came into their hands before the seizure under Baldwin's attachment. On the 5th February of the same year, Bracy had drawn on the consignees for two thousand four hundred dollars, who accepted and paid his bill. On the face of this bill, the drawer requests it to be paid as an advance on his crop of cotton, said to be sixty-five bales.

Under these facts, the decision of the cause depends mainly on a proper construction of the *art.* 3214 of the *Louisiana Code.* According to this article, every consignee or commission agent who has made advances on goods consigned to him, or placed in his hands to be sold for account of the consignor, has a privilege for the amount of these advances, with interest and charges on the value of the goods, if they are at his diposal in his stores, or in a public warehouse; or if before their arrival he can show by a bill of lading, or letter of advice, that they have been dispatched to him, &c. The privilege here allowed requires one of two things to create it—either that the goods should be in the possession of the consignee, or that he should have received a bill of lading, or letter advis-

A consignee has no privilege upon goods until they are delivered, unless he has received a bill of lading, or letter advising him of the shipment.

ing him of the shipment. In the present case neither one nor the other of these occurrences took place before the seizure of the goods by the attaching creditor: unless as contended for by the counsel of the appellants, the draft or bill of exchange, drawn by the defendant on the consignees, should be considered as a letter of advice, as it was received and paid previous to the shipment of the cotton. The drawer requests the payment of it as an advance on his crop of cotton, estimated at 65 bales; but he gives no advice of its actual or even intended shipment at any particular period. The bill was honored and paid by the drawee, more than twenty days before the cotton was put on board the boat.

Such being the circumstances attendant on this letter of exchange, it cannot, without a most strained and unreasonable construction, be considered as a letter of advice relative to the consignment of the cotton. The claim of the appellants is therefore not supported by this article of the *Code*. Neither can these pretensions be aided by the actual delivery of the cotton to the master of the steam-boat, for the purpose of being conveyed and delivered to them as consignees.

If they had been purchasers of the cotton from Bracy, at a stipulated price, and the latter had forwarded it to them, perhaps a delivery to the person who undertook to carry it, might be considered as a delivery to the vendees, even without an order to that effect, and would have screened them against attachments of the creditors of the vendor.

**The ownership of goods is not changed by a delivery to the master of the vessel, or to the consignee; they are however subject to the claim of the latter for advances.**

It cannot, however, be pretended in the present case with the least semblance of truth, that the mere delivery of the cotton to the master of the boat, changed its ownership. Bracy still remained the owner, and would have continued to be such, even after delivery to Fiskes', subject to their privilege for advances: previous to that event it was under the entire control of the owner, and liable to be seized by his creditors. This case differs in this respect from the case cited from 7 *Mart. n. s.* 137.

It is therefore ordered, adjudged and decreed, that the judgment of the parish court be affirmed with costs.