# SUPREME COURT OF LOUISIANA,

IN THE

## EASTERN DISTRICT, AT NEW ORLEANS,
## COMMENCING, NOVEMBER, 1843.

~~~~~~~~~~~~~~~~~~~~~~~~~~

PRESENT:

Hon. FRANÇOIS XAVIER MARTIN.
Hon. HENRY A. BULLARD.
Hon. ALONZO MORPHY.
Hon. EDWARD SIMON.
Hon. RICE GARLAND.

~~~~~~~~~~~~~~~~~~~~~~~~~~

Cicero Davis *v.* Nimrod Houren and others, owners of the steamer Hudson.

Evidence taken in an action against the owners of a steamer, for an injury done to a vessel of plaintiffs by the steamer of the defendants, to which action the captain of the steamer is not a party, is not binding on him.

The proprietors of steam tow-boats, such as ply between New Orleans and the Gulf of Mexico, are common carriers, and responsible as such. But it does not follow, because the proprietors are responsible to others for the negligence or misconduct of all their agents and servants, that these are responsible to the proprietors for each other. Thus, the captain cannot be held responsible to the owners, for damages to which the latter were subjected in consequence of an injury to another vessel, resulting from mismanagement of the steamer during the pilot's watch, and when the captain was asleep. *Per Curiam.* It is physically impossible that the master of a vessel can always be on deck, and he cannot be held liable for every act or omission of the other officers.

The proprietors of steamers, such as are employed in towing vessels between New

Davis v. Houren and others.

Orleans and the Gulf of Mexico, are commercial partners. C. C. 2974. *Per Cu-riam.* It does not follow because these boats have no privilege for their hire, that their owners are not responsible in the same manner as the owners of boats different-ly employed. Privileges are arbitrary provisions of the law.

After the dissolution of a partnership, none of the members can bind the others, with-out special authority from them. Nor can they, after such a dissolution, bind the others, or the firm, for the payment of a debt which has been prescribed, any more than they can create an entirely new obligation.

An acknowledgment of a debt by any one of several debtors bound *in solido*, inter-rupts prescription as to all. The words *joint-debtor* in art. 3517 of the Civil Code, were inserted in the English text of the article through an error of the translator or transcriber.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

GARLAND, J.* This action is brought to recover the sum of $1247 75, which the plaintiff alleges is due to him, for his wages and services as the master of a steam tow-boat called the Hudson, which belonged to the defendants, and was engaged in towing ships, and other vessels, to and from sea, and the mouths of the Mississippi, to the city of New Orleans and other places. The services commenced on the 20th of October, in the year 1839, and terminated on the 10th of July, 1840; and the compensation claimed is at the rate of $166 66 per month.

The defendants, J. & G. Heaton, after a general denial, admit that they were interested in the boat in different proportions, but deny that they were commercial partners with Houren and Clark, their co-owners, and say, if they are at all liable to the plaintiff, it is only jointly, and not *in solido*. They specially deny that Houren was their agent, or partner, on the 1st February, 1841, as they had previously sold their interests in the boat; and they plead the prescription of one year against the demand. They then set up a demand in reconvention against the plaintiff, for a sum larger than he claims, because they say that, in the month of May, 1839, he, being then the master of their aforesaid boat, and having in tow six vessels of different classes, bound to sea, negli-gently and imprudently ran the boat ashore, whereby a Spanish

---

*BULLARD, J., took no part in the decision of this case, not having been on the bench at the time of the argument. SIMON, J., was absent both then, and at the time of the decision.

brig called the Merced, and a schooner called the Creole, were much injured and damaged, for which they (the defendants) were compelled to pay $1821 68 damages to the owners, as will appear by the records of two suits brought by the owners of the said vessels, in the Commercial Court, and the receipt for the money by their attorney. For answer to this demand, the plaintiff alleges that it was not by any fault or negligence of his that the vessels were injured; that subsequent to the period last mentioned, (May 6th, 1839,) he has had transactions and business with the defendants—has settled accounts with them, and that they never claimed these damages. He avers that they are not owing in any manner, and if ever they were, that they are prescribed by one year.

To the petition was annexed an account as follows :—

"New Orleans, February 1st, 1841.
"Steam Boat Hudson and Owners
              To Cicero Davis,     Dr.
"For services rendered on board of said boat   $1247 75
           "Approved.
                      "NIMROD HOUREN."

George and James Heaton and Houren continued to be the owners of the boat, until the month of December, 1840, when George Heaton sold his interest to the latter, and the Hudson was afterwards owned by Houren and James Heaton, and was so, at the time the above approval of the account was made. That the plaintiff was the master of the boat during the time mentioned, and that his wages were at the rate claimed, is sufficiently shown. It is in fact not seriously contested. The citations were served on the defendants, March 11th, 1841. Houren has not filed any answer, and the final judgment against him is not appealed from. In support of the plea in reconvention, the defendants produce the records and judgments in the cases of the owners of the Merced and Creole against them, which were settled by Houren paying one hundred dollars in cash, and giving his notes for the remainder. Neither of the Heatons shows that they ever paid any part of these judgments, nor that they have accounted for their portions in settlement with Houren. He makes no claim in reconvention, nor is he before us. The plaintiff was no party to the

suits of the owners of the vessels against the defendants, nor does it seem that he was even called by them as a witness; and the only evidence of any accident having happened, or damages being sustained, is the production of those records, and one witness, whose testimony does not sustain the allegation, but on the contrary rather goes to exculpate the plaintiff. In the trial of these cases the plaintiff was not heard; he had no opportunity of examining the witnesses, nor of justifying his conduct on the occasion for which it is alleged he is liable.

The court below rejected the demand in reconvention, and gave a judgment *in solido* against George and James Heaton for $666 66 and the costs, and a separate judgment against Houren for $581 09; and from the former, this appeal is taken. Both parties insist.that the judgment is wrong, and ask us to correct it. The plaintiff says that he should have had a judgment for the whole amount of his claim; the defendants say that he is not entitled to any thing, and that they ought to recover the sum claimed in reconvention.

We are of opinion that the court below did not err in rejecting the demand in reconvention. It is not sustained by sufficient evidence given in this suit. We do not consider Davis as bound by evidence given in suits to which he was no party, and of the existence of which it is not shown that he was informed. Even if he were bound by the evidence, it is questionable whether it would make him responsible in damages to the defendants. The statement is, that the Hudson left the city with a very heavy tow—a ship on each side, and three schooners and the brig astern. The hour of departure was about half-past nine, P. M.: the night was clear, and all the witnesses say, a good one for going down the river. At a late hour the plaintiff went to bed. Between twelve and one o'clock a fog suddenly rose, and soon became so dense, that the shore, and objects at a little distance, could not be seen. The master of the Creole says, that he could scarcely see the vessel along side of him. The pilot, who is not shown to be incompetent, testifies, that he and the inferior officers, at the time, had charge of the deck, and that as soon as he found he could not navigate safely, he ordered the fires of the boat to be *wet* down, and hailed the vessels to put their helms a-port, and get their an-

chors ready; that he then went to seek the captain, but as some one had fastened the cabin door aft, he was delayed some minutes, and was obliged to go forward, when he saw the loom of the land on the bows. The plaintiff was directly on deck, and ordered the vessels astern to star-board their helms, and at the same time cast off their hawsers from the boat. The schooner obeyed; and all went clear; but the officers of the Spanish brig not understanding the English language, did not obey, and consequently, the brig got wedged in between the boat and one of the ships, and was injured seriously. The plaintiff then, fearing that his boat would be greatly injured, cast off the ships and backed out, when one of the ships in drifting down stream struck the schooner and injured her. It was proved that sudden and dense fogs are frequent in that part of the Mississippi; and that other tow-boats were running the same night, the officers of one of which saw the Hudson with her tow, a short time before the accident, and did not think there was then any danger. It is also shown, that the pilot who had charge of the boat at the time of the accident, was employed by George Heaton, before the plaintiff took command.

We think it not improbable, that the judgments in the cases against the defendants, for injuring the brig and schooner were correctly rendered, in conformity with the principles upon which the case of *Smith et al.* v. *Peirce et al.*, (1 La. 350,) was decided by this court. It was there held, that the proprietors of tow-boats were common carriers, and subject to all responsibilities as such; but it does not follow, that, because the proprietors are responsible to others for the negligence or misconduct of all their agents and servants, that all these are responsible to the proprietors for each other. It was not the watch of the plaintiff when the alleged injuries were inflicted, but of another. It is physically impossible that the master of a vessel can always be on deck; and it is not right that he should be responsible to his owner for every act or omission of the other officers. His liability is very great, but we are not disposed to carry it to the extent claimed.

The defendants contend that, the owners of tow-boats are not commercial partners, as we have often held that the owners of other steamboats are. We think otherwise. Although employed for hire in a manner somewhat different from boats navigating the

river above New Orleans, we do not think there should be a different responsibility on the part of the owners. In this case, it is proved, that their general business is to tow vessels to and from sea; to lighten and assist sea-going vessels over, and drag them off bars; oftentimes taking out their cargoes and carrying them to places of safety; sometimes carrying passengers, and taking freight up and down the river, transporting specie, &c. It is said that a vessel merely making trips from the city to the mouth of the Mississippi does not make a voyage, and that her owners do not come within the meaning of article 2796 of the Civil Code. A steamboat that goes to Lafourche, or Baton Rouge, transporting sugar or cotton in her hold or on deck, it is admitted, earns her hire by so doing, and makes her owners responsible as commercial partners; but if the same boat goes to the Balize, or to sea, earning her hire by towing five or six sea vessels, it is contended that she does not make her owners responsible in the same capacity, although a much greater interest and responsibility exist.

It is further said, that because this court have held, in 17 La. 162, that tow-boats have no privilege for their hire, therefore, their owners are not responsible in the same manner as owners of boats differently employed. We do not think this a logical conclusion. Privileges are arbitrary provisions of law, granted to secure the execution of certain kinds of contracts; but the character of the personal responsibility is not affected. A privilege is an accessory right, and although an obligor may not be entitled to it, he is not discharged from his liability.

The plaintiff complains that the court erred, in maintaining the defendants' plea of prescription for all the wages which were owing for one year previous to the institution of the suit. The defendants rely upon that portion of article 3499 of the Civil Code, which says, that the action for the payment of the wages of the officers, sailors, and others of the crew, of ships and other vessels, is prescribed by one year. The plaintiff says, that he is taken out of this clause, as Houren, one of the owners of the boat, had acknowledged and approved his account; and that he comes within the second clause of article 3500. To this, the defendants reply, that at the time this account was approved, the partnership between them and Houren had been dissolved, by his purchase,

in December, 1840, of all George Heaton's rights; and that he had no right to bind his former partners in any manner. This, we think, is clear. It is well settled, that after a partnership is dissolved, no one of the partners can bind the others without a special authority from them; and one has no more right after a debt is fully prescribed, to contract anew, in the name of the firm to pay it, than he has to create an entirely new obligation. In this case, Houren did not sign any partnership name, but his own; and this, the plaintiff contends, at least, interrupts the prescription, as it is an acknowledgment of one of the debtors *in solido* of the existence of the debt, and that the prescription only runs from the day of the interruption. In this, we think, the counsel for the plaintiff is correct. Article 3516 of the Code says, " that the prescription releasing debts is interrupted by all such causes, as interrupt the prescription by which property is acquired." Article 3486 says, that " prescription ceases to run, whenever the debtor or possessor makes acknowledgment of the right of the person, whose title they prescribed;" and we have but little doubt, that article 3517 was intended to cover the case in point : but in consequence of one of those frequent errors in translating the Code, the English text is different from the French, and does not in terms include debtors *in solido*, which the French text does. The French text says, that the acknowledgment of one of the debtors *in solido*, interrupts prescription as to the others, and their heirs. The words, *debiteurs solidaires*, are translated into English, *joint debtor*. We cannot see any reason for giving greater effect to the acknowledgments of a joint debtor upon his co-obligors, than to those of a debtor *in solido*. The provision in the English text, is at variance with the general provisions of the Code, in relation to the two classes of debtors, and we have no doubt it is an error of a translator or transcriber. This doctrine is asserted in positive terms by Pothier, Toullier, and other commentators and jurists. 1 Pothier, 217, No. 698. 3 Toullier, p. 474, No. 728; Brussels edition.

We are, therefore, of opinion, that the prescription only applies to the wages owing anterior to the 1st of February, 1840, instead of those previous to the 11th of March, of that year; which will entitle the plaintiff to recover, two hundred and twenty-six dollars

and eighty-three cents more than is allowed by the inferior court, and in this respect, we think the judgment should be amended.

It is, therefore, ordered and decreed, that the judgment appealed from be amended, and that the plaintiff recover of George and James Heaton, *in solido*, the sum of eight hundred and ninety-three dollars and forty-seven cents, with costs in both courts; but upon this judgment, and that rendered against Houren in the court below, the plaintiff shall only receive the sum of $1247 75, for which sum Houren is bound in the approved account.

*Perin*, and *A. Walker*, for the plaintiff.

*Wray*, for the appellant.