Labauve, J.
The plaintiffs claim of the defendants the sum of $805 55, - for damages alleged to have been sustained by the schooner Carrie Sanford, through the fault and negligence of the defendants, owners of the steam twoboat Anglo Saxon.
The Anglo Saxon left the bar on the 21st December, 1858, with two ships, made fast on each side, and two small vessels astern, the Carrie Sanford and a Spanish bark, the Providencia. The vessels astern were towed by hawsers, fifty or sixty fathoms in length, and made fast in the usual way, by the bits aft on the towboat, the Carrie Sanford on the port side, and the Spanish bark on the starboard side. As the towboat and vessels were coming up, and rounding Poverty Point, the hawser of the Spanish bark parted, and the bark came into collision with schooner Carrie Sanford, inflicting the damages complained of. The hawser, which parted, was a nine-inch hawser belonging to the bark, which was steered by its own men.
Charles Decker, the mate of the Carrie Sanford, testified that it is usual for towboats to take smaller vessels in tow astern. The proper place for. the bark was immediately astern of the ship ahead of her. If she .had been properly steered, there was no difficulty in her keeping her proper place. There would be no danger for vessels in tow astern, if they are properly managed.
Capt. George Heatis testified that he had been connected with towage business since 1829, and that he never knew any person sent from the *496 towboat on board vessels astern to steer them. They are always steered by their own men; that he considered there was no danger for any of the vessels astern when properly steered, and there was no difficulty in Steering them .properly.
The whole testimony goes to show that the Spanish bark was improperly ,steered, and that it was in consequence of this bad management that her hawser parted, and that she came in collision with the Carrie Sanford, and caused the damages complained of. As to the towboat Anglo Saxon, she was properly managed, and the accident happened through the neglect and fault of the man who steered the Spanish bark, and not by an -uncontrolling event, force majeure.
The question now arises: Are the defendants responsible for the neglect and fault of the Spanish bark?
The proprietors of steam towboats, such as ply between New Orleans and the Gulf of Mexico, are common carriers, and responsible as such. Cicero Davis v. Nimrod Howsen et als., 6 Rob. 255. Smith v. Price, 1 La. Rep. 354.
The owners of the towboat Anglo Saxon, being regarded as common carriers, were bound to tow the Carrie Sanford in safety, and the man steering the Spanish bark became their agent for the time being, the said Spanish bark being considered under the control and management of the captain of the said towboat Anglo Saxon.
In the case cited, Smith v. Price, 1 La. 354, this Court, speaking of the eaptdn of a towboat, said:
“By the contract for towing, he is bound to carry vessels safely to their destination, unless prevented by uncontrollable accidents, or such as are not within the control of human foresight or power. If the boat be so much under the influence of the rudder of the ship, it'is the duty ' of the master of the towboat to look to it. His understanding is to tow the vessel in safety, and he has a right to assume all the authority necessary to effect that purpose. The command and care of the vessel towed, should.either be subjected to his command, whilst she is carried by his boat, or her rudder should be placed in the hands of one of his own men. -We consider a vessel thus towed, as property carried for hire, in which her crew should not be viewed as having any lawful agency.”
We are of opinion that the defendants are liable.
We now come to the question of damages:
The bills of expenses for the repairs, amounting to $305 56, have been received in evidence, and are not disputed. The demurrage of the boat during eleven days is not contested, but the estimate put by witnesses, is different. After comparing the testimony, we have come to the conclusion that the fair value is $27 50 per day, making $302 50.
Our learned brother below gave judgment for defendants. We believe he erred.
It is therefore ordered and decreed, that the judgment appealed from be annulled and reversed. It is further ordered and decreed that the defendants pay, in solido,.to the plaintiffs, the sum of six hundred and eight dollars and five cents, with legal interest from judicial demand, to-wit: the 29th January, 1859, and cost of suit in both courts.
Howell, J,, recused. Rehearing refused.