No. 2474.—Bussey & Co. *v.* Mississippi Valley Transportation Company.

A towboat used in towing barges or other water craft, which are loaded with freight, from one point to another on the river, is a common carrier, and the persons owning such towboat, who undertake to tow a barge, loaded with freight or merchandise from one given point to another on the Mississippi river, first giving a bill of lading for the transportation of the cargo on board of the barge, are liable for the delivery of the cargo at the port of destination the same as if it had been placed on board the towboat herself.

The value of goods shipped on board of a barge at St. Louis, to be towed to New Orleans by a towboat, may therefore be recovered from the company owning the towboat in case of loss while on the trip, resulting from the negligence, carelessness or want of skill in the persons managing the towboat.

APPEAL from the Fourth District Court, parish of Orleans. *Théard, J. Gibson & Austin,* for plaintiffs and appellees. *R. & H. Marr,* for defendants and appellants.

Howe, J. The plaintiffs, a commercial firm, sued the defendants, a corporation, whose business is to transport merchandise in their own model barges, and to tow the barges of other parties for hire between St. Louis and New Orleans.

The bill of lading, given by defendants to plaintiffs, recites the receipt from plaintiffs of one barge loaded with hay and corn, "in apparent good order in tow of the good steamboat Bee and barges," "to be delivered without delay in like good order (the dangers of navigation, fire, explosion and collision excepted) to Bussey & Co. at New Orleans, Louisiana, on levee or wharf boat, he or they paying freight at the rate annexed, or $700 for barge, and charges $267 50." * * * "It is agreed with shippers," the bill continues, "that the Bee and barges are not accountable for sinking or damage to barge, except from gross carelessness."

It was alleged by plaintiffs that defendants had neglected to deliver the barge and her valuable cargo according to their contract. The defendants answered by a general denial, and by a recital of what they claimed to be the circumstances of the loss of the barge and cargo, in which they contended they were without blame; and that the loss did not result from gross carelessness on their part, and they were not liable under the bill of lading. Other defenses were raised by the answer which have been abandoned.

The court *a qua* gave judgment for plaintiffs for the amount claimed as the value of the barge and cargo, $15,272 60, with interest from judicial demand, and defendants appealed.

The appellants contend, as stated in their printed argument,

"*First*—That they are not common carriers, or rather that their undertaking in this, or like cases, is not that of a common carrier.

"*Second*—That they are liable, if liable at all, only in case of gross carelessness.

" *Third*—That the restriction of liability contained in the agreement to tow the barge in question exonerates them, except in case of gross carelessness—as the appellants were bound to use but ordinary prudence, even if they were common carriers.

" *Fourth*—That the judgment rendered is for a larger amount than the testimony will authorize."

The question whether a towboat under the circumstances of this particular case is a common carrier has been long settled in the affirmative in Louisiana; and the reasoning by which Judge Matthews supported this conclusion in the leading case of Smith *v.* Pierce, 1 La. 354, is worthy of the sagacity for which that jurist was pre-eminent. The same opinion was clearly intimated by the Supreme Court of Massachusetts in the case of Sproul *v.* Hemmingway, 14 Pickering, p. 1, in which Chief Justice Shaw was the organ of the court.

In the case also of Alexander *v.* Green, 7 Hill p. 533, the Court of Errors of New York seem to have been of the same opinion.  Four of the senators in giving their reasons distinctly state their belief that the towboat in that case was a common carrier, and Judge Matthews' decision is referred to in terms of commendation as a precedent.  It is true that Mr. Justice Bronson, whose opinion was thus reversed, in a subsequent case declares (2 Comstock, 208) that nobody could tell what the Court of Errors did decide in Alexander *v.* Greene, but the facts remain as above stated, and the effect of the case can not but be to fortify the authority of the decision in 1 La.

In addition to these authorities we have the weighty opinion of Mr. Kent who includes " steam towboats" in his list of common carriers, 2 Kent 599, and of Judge Kane in 13 Law Reporter 399.  On the other hand, Judge Story seems to be of a different opinion (Bailments § 496), and Mr. Justice Grier differed from Judge Kane.

So, too, the Supreme Court of New York, in Caton *v.* Rumney 13 Wendell 387, and Alexander *v.* Greene, 3 Hill 9; the Court of Appeals of the same State in Well *v.* Steam Nav. Co., 2 Comstock 207; the Supreme Court of Pennsylvania in Leonard *v.* Hendrickson, 18 State, 40, and Brown *v.* Clegg, 63 State 51; and the Supreme Court of Maryland in Penn. Co. *v.* Sandridge, 8 Gill & Johnson 248, decided that tugboats in these particular cases were not common carriers. We are informed that the same decision was made in the case of the Neafie, lately decided in the United States Circuit Court in New Orleans.

Such conflict of authority might be very distressing to the student, but for the fact that when these writers and cases cited by them are examined the discrepancy, except in the decision in 63 Penn., is more imaginary than real.   There are two very different ways in which a steam towboat may be employed, and it is likely that Mr. Story was

contemplating one method and Mr. Kent the other. In the first place it may be employed as a mere means of locomotion under the entire control of the towed vessel; or the owner of the towed vessel and goods therein may remain in possession and control of the property thus transported to the exclusion of the bailee; or the towing may be casual merely, and not as a regular business between fixed *termini*. Such were the facts in some form as stated or assumed in Caton *v* Rumney, 13 Wend. and Alexandria *v.* Greene, 3 Hill, cited by Judge Story in the case of the Neafie, and in the cases above quoted from 2 Comstock, 18 Penn. State, and 8 Gill & Johnson; and it might well be said that under such circumstances the towboat or tug is not a common carrier. But a second and quite different method of employing a towboat is where she plies regularly between fixed *termini*, towing for hire and for all persons, barges laden with goods, and taking into her full possession and control, and out of the control of the bailor the property thus transported. Such is the case at bar. It seems to satisfy every requirement in the definition of a common carrier. Story on Bail § 495. And it was probably to a towboat employed in this way that Mr. Kent referred in the passage quoted above; and that the Supreme Court of Massachusetts had in mind in the 14 Pickering; and see also Davis *v.* Housen, 6 Rob. 259, and Clapp *v.* Stanton 20 An. 495. We must think that in all reason the liability of the defendants under such circumstances should be precisely the same as if, the barge being much smaller, it had been carried, cargo and all, on the deck of their tug.

But conceding that this case as a contract of affreightment must be determined by the law of Missouri (4 Martin 584), and that by that law the defendants are not common carriers as to the plaintiffs, we think it clear from the evidence of the defendants' own witnesses that they were guilty of "gross carelessness" in their attempt to deliver the plaintiffs' barge with its cargo at the port of New Orleans, and that by this gross carelessness she was sunk, and, with her cargo, destroyed.

What is "gross carelessness?" In an employment requiring skill, it is the failure to exercise skill. New World *v.* King, 16 Howard 475. The employment of the defendants certainly required skill. A lack of that dexterity which comes from long experience only, might be swiftly fatal, for but a single plank intervenes between the costly cargo and instant destruction. We have but to read the testimony of defendants' own witnesses, and especially Conley, Turner, Burdeau, and Sylvester, to see that the attempt to land the barge was made without skill, and that it might easily have been effected with entire safety.

We are of opinion that the judgment was correctly rendered in favor

Bussey & Co. v. Mississippi Valley Transportation Company.

of plaintiffs, but that the amount is somewhat excessive. We find the value of the property lost at this port, less the freight and charges, and a small amount realized from the wreck to be $13,268·50.

It is therefore ordered that the judgment appealed from be amended by reducing the amount thereof to the sum of thirteen thousand two hundred and sixty-eight dollars and fifty cents with legal interest from judicial demand and costs of the lower court, and that as thus amended it be affirmed, appellees to pay costs of appeal.