## No. 36.

### B. D. WOOD & BROS. *v.* HARBOR TOW-BOAT COMPANY.

1. Under the jurisprudence of Louisiana, *tow-boats* are *common carriers*. 1 La. 354 ; 24 An. Rep. 166.
2. In an action for loss or damage against such boats, the burden of proof is upon the carriers. C. C. Art. 2754.
3. The pilot or manager of the tug will not, as a defense to an action for damages resulting from negligence, be permitted to show that he was ignorant of the difficulties attendant upon the service which he undertook, and which, though peculiar to the current of the river in certain localities, are shown to be understood and appreciated by all skilled navigators on its waters and along its banks.
4. Where a vessel is moored to the wharf, and another steamer is under way, and so susceptible of control and management, an accident occurs by reason of a collision between the two, the presumptions of liability for the damages sustained are in favor of the moored vessel and against the one under way.
5. Where the usual means adopted for the performance of a particular service have been disregarded by the party undertaking the service, because in his judgment they were not deemed necessary, the court, in the event of a damage, will not undertake to determine whether this exercise of judgment was wise or unwise ; he assumed a responsibility, and must be held for the consequences.

*Appeal from the Fourth District Court. Houston, Judge.*

*C. S. Rice* for plaintiffs.

*B. Egan* for appellants.

ROGERS, J.—The plaintiffs were the owners of a coal barge, alleged to be worth $100, and to have in it, say 1200 barrels of coal, worth $600. This barge, so laden, was lying, on the morning of July 11th, 1875, in the Mississippi river, nearly opposite Jackson Square. Being desirous of removing it to some other point, the plaintiffs employed the defendant, who was a corporation engaged in the towing business in the harbor of New Orleans and in and about the Mississippi river, to make such removal. The defendant undertook to do so with one of his steam tug-boats, called the "Reliance," "but by

and through the carelessness, negligence and incompetency of the officers and crew of said tug-boat, the said Barge was run upon or against the screw of the ocean steamer called the "Knickerbocker," and was thereby damaged and wrecked, so as to cause her at once to sink, with all the coal aforesaid aboard of her, so that said barge and said coal were and are a total loss."

The defendants answered by a general denial of indebtedness for the causes set forth by plaintiffs, admitting, however, that they were employed to perform the towing service alleged; that they reluctantly consented to the employment, as the work was to be done on Sunday, and the barge to be removed was lying in a difficult and dangerous position to be handled by a tug of the size and power of the "Reliance." That the defendants on Sunday morning proceeded with the tug "Reliance" to the place indicated, and found the coal and stage-boat lying alongside a sailing vessel, between the steamers "W. C. Lord" and "Knickerbocker;" that after making repeated attempts to get hold of the coal-boat and get her out from the landing, and when she had finally succeeded in "springing her head off, and was under way getting out," the steamship "Knickerbocker" started her screw and "knocked a hole" in the bottom of the coal-boat about sixteen feet from the stern; the barge was sunk and lost. The defense is further that the tug was commanded by an experienced and skillful officer; that he was guilty of no neglect, carelessness or mismanagement, and that the loss of the boat was due and owing to circumstances over which respondents had no control; in other words, that the loss was occasioned by an "*inevitable accident.*"

Under the jurisprudence of Louisiana, tow-boats are common carriers. Bussey & Co. *v.* Mississippi Valley Co., 24th La. An. Rep., page 166, affirming the doctrine enunciated in Smith *v.* Pierce, 1 La. 354.

In an action for loss or damage against such carriers, the burden of proof is upon the carrier.

"Carriers and watermen are liable for loss or damage of the

things entrusted to their care, *unless they can prove* that such loss or damage has been occasioned by accidental or uncontrollable events." Civil Code, Art. 2754.

The evidence shows that along the shore of the left bank of the Mississippi river, from Esplanade to Julia streets, and to a distance from twenty-five to an hundred yards from shore, the water runs generally " up stream ;" this current is changeable ; to quote the language of the witnesses, " they (the towboats) go up there sometimes, and they think the current is setting up, and it will set right in ; it shifts so quick. " It is pretty hard landing by the New York steamship landing ; the eddy changes ; sometimes it runs up and sometimes down, and sometimes in." This feature of the Mississippi is recognized as established, and of course understood and appreciated by all skilled navigators on its water and along its banks. In about the worst or most difficult part of this eddy or changing current the barge and bridge were moored.

The pilot and manager of the tug-boat was undeniably skilled and experienced as a navigator on the Mississippi river, and for years had devoted his time and services to the towing business. It cannot be disputed, nor would he be permitted to dispute the fact, that he was fully aware of all the difficulties attendant upon the service for which his tug was engaged.

The steamer " Knickerbocker " was fast to the wharf, and lying in the water at her wharf motionless ; and to use the words of defendants witness, " his vessel (the tug) was low in the water, and from his (defendant's) position could have seen the steamer's propeller.

The " Knickerbocker," as all steamers, is in the habit of trying her propellers at stated periods. This was known to defendant's manager, and he states that the propeller had been working before the barge had passed under her quarter. There can be no doubt, if we are to consider presumptions, that we must conclude in favor of the moored steamer and against the tug, under way, and susceptible of control and management. This we say, because defendant contends the

damage was occasioned by the fault of the officers of the " Knickerbocker," and that the action should have been instituted against that vessel.

The testimony in this case establishes that the usual means adopted in towage, under the circumstances, were not availed of by defendant; that in the exercise of his judgment he did not deem their use necessary; he, therefore, took upon himself a responsibility, wisely or not, is not our purpose to determine.

The accident, and consequent loss, occurred; it is certain he has not shown that he should be excused on the ground of " inevitable accident."

Judgment affirmed.